**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

ROBERT CRAWFORD, On Behalf of )
Himself and All Others Similarly Situated, )
                               )
              Plaintiff, )
                               )
       v. )
                               )
ATHENAHEALTH, INC., AMY )
ABERNETHY, BRANDON H. HULL, )
JEFFREY R. IMMELT, DEV ITTYCHERIA, )
JOHN A. KANE, JACQUELINE B. )
KOSECOFF, BRIAN MCKEON, ED PARK, )
and THOMAS J. SZKUTAK, )
                               )
              Defendants. )
                               )

Civil Action No.   1:19-cv-10033

**CLASS ACTION**
**COMPLAINT FOR**
**VIOLATION OF THE**
**FEDERAL SECURITIES LAWS**

**JURY TRIAL DEMANDED**

      Plaintiff Robert Crawford ("Plaintiff"), on behalf of himself and all others similarly situated, upon information and belief, including an examination and inquiry conducted by and through his counsel, except as to those allegations pertaining to Plaintiff, which are alleged upon personal belief, alleges the following for his Class Action Complaint:

**NATURE AND SUMMARY OF THE ACTION**

      1.     This is a stockholder class action brought by Plaintiff on behalf of himself and all other public stockholders of athenahealth, Inc. ("athenahealth" or the "Company") against athenahealth and the members of its Board of Directors (collectively, the "Board" or the "Individual Defendants," as further defined below) for their violations of Section 14(a) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§ 78n(a) and 78t(a) and to enjoin the vote on a proposed transaction, pursuant to which athenahealth will be acquired by May Holding Corp. ("Parent"), an affiliate of Veritas Capital ("Veritas") and Evergreen Coast Capital ("Evergreen"), a subsidiary of Elliott Management Corporation (together with its affiliate Elliott

Associates, L.P., "Elliott"), which owns approximately 9% of the Company's stock (the "Proposed Transaction").

2.     On November 12, 2018, athenahealth, Veritas and Evergreen issued a joint press release announcing they had entered into an Agreement and Plan of Merger dated November 11, 2018 ("Merger Agreement"), pursuant to which May Merger Sub Inc., ("Merger Sub") will merge with and into athenahealth, with athenahealth continuing as the surviving corporation and a wholly owned subsidiary of Parent.  Pursuant to the terms of the Merger Agreement, athenahealth's stockholders will receive $135.00 in cash for each share of athenahealth common stock they hold. The Proposed Transaction is valued at approximately $5.68 billion and is expected to close in the first quarter of 2019.

3.     Following the closing of the Proposed Transaction, Veritas and Elliott expect to combine athenahealth with Virence Health ("Virence"), a health information technology business that Veritas acquired from GE Healthcare in 2018.

4.     On December 21, 2018, athenahealth filed a Definitive Proxy Statement on Schedule 14A (the "Proxy Statement") with the SEC in connection with the Proposed Transaction. The Proxy Statement, which recommends that athenahealth stockholders vote in favor of the Proposed Transaction, omits or misrepresents material information concerning, among other things: (i) the financial projections for athenahealth, relied upon by athenahealth's financial advisors, Centerview Partners, LLC ("Centerview") and Lazard Frères & Co. LLC ("Lazard"), in their financial analyses; (ii) the data and inputs underlying the financial valuation analyses that support the fairness opinions provided by Centerview and Lazard; (iii) the background process leading to the Proposed Transaction; (iv) Lazard's potential conflicts of interest; and (v) Company insiders' potential conflicts of interest.  The failure to adequately disclose such material

information constitutes a violation of Sections 14(a) and 20(a) of the Exchange Act, as athenahealth stockholders need such information in order to make a fully informed decision whether to vote in favor of the Proposed Transaction or seek appraisal.

5.      In short, unless remedied, athenahealth's public stockholders will be forced to make a voting or appraisal decision on the Proposed Transaction without full disclosure of all material information concerning the Proposed Transaction being provided to them.  Plaintiff seeks to enjoin the stockholder vote on the Proposed Transaction unless and until such Exchange Act violations are cured.

## JURISDICTION AND VENUE

6.      This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

7.      This Court has jurisdiction over the defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

8.      Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Plaintiff's claims arose in this District, where a substantial portion of the actionable conduct took place, where most of the documents are electronically stored, and where the evidence exists.  athenahealth is incorporated in Delaware and is headquartered in this District.  Moreover, each of the Individual Defendants, as Company officers or directors, either resides in this District or has extensive contacts within this District.

## THE PARTIES

9.     Plaintiff is, and has been at all times relevant hereto, a continuous stockholder of athenahealth.

10.     Defendant athenahealth is a Delaware corporation with its principal executive offices located at 311 Arsenal Street, Watertown, Massachusetts, 02472.  athenahealth partners with hospital and ambulatory customers to drive clinical and financial results.  athenahealth offers medical record, revenue cycle, patient engagement, care coordination, and population health services.  athenahealth combines insights from its network of more than 120,000 providers and approximately 117 million patients with deep industry knowledge and perform administrative work at scale.  The Company's common stock is traded on the NASDAQ Global Select Market under the ticker symbol "ATHN."

11.     Defendant Amy Abernethy ("Abernethy") has been a director of the Company since October 2013.

12.     Defendant Brandon H. Hull ("Hull") has been a director of the Company since October 1999.

13.     Defendant Jeffrey R. Immelt ("Immelt") has served as Executive Chairman of the Board since June 2018, Chairman of the Board from February 2018 to June 2018 and a director of the Company since February 2018.

14.     Defendant Dev Ittycheria ("Ittycheria") has been a director of the Company since July 2010.

15.     Defendant John A. Kane ("Kane") has been a director of the Company since July 2007 and served as Interim Chief Financial Officer from July 2017 to January 2018.

16.     Defendant Jacqueline B. Kosecoff ("Kosecoff") has been a director of the Company since June 2012.

17.     Defendant Brian McKeon ("McKeon") has been a director of the Company since September 2017.

18.     Defendant Ed Park ("Park") has been a director of the Company since January 2017.

19.     Defendant Thomas J. Szkutak ("Szkutak") has been a director of the Company since June 2016.

20.     Defendants Abernethy, Hull, Immelt, Ittycheria, Kane, Kosecoff, McKeon, Park and Szkutak are collectively referred to herein as the "Board" or the "Individual Defendants."

## OTHER RELEVANT ENTITIES

21.     Veritas is a leading private equity firm that invests in companies that provide critical products and services, primarily technology and technology-enabled solutions, to government and commercial customers worldwide, including those operating in the aerospace & defense, healthcare, technology, national security, communications, energy, government services and education industries.  Veritas seeks to create value by strategically transforming the companies in which it invests through organic and inorganic means.

22.     Elliott Management Corporation manages two multi-strategy investment funds which combined have approximately $35 billion of assets under management.  Its flagship fund, Elliott Associates, L.P., was founded in 1977, making it one of the oldest funds of its kind under continuous management.  The Elliott funds' investors include pension plans, sovereign wealth funds, endowments, foundations, funds-of-funds, high net worth individuals and families, and employees of the firm.

23.     Evergreen is Elliott Management Corporation's private equity affiliate, which focuses on technology investing.

24.     Parent is a Delaware corporation and an affiliate of Veritas and Evergreen, and an affiliate of certain entities operating under the name Virence.

25.     Merger Sub is a Delaware corporation and a wholly-owned subsidiary of Parent.

**CLASS ACTION ALLEGATIONS**

26.     Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of all persons and entities that own athenahealth common stock (the "Class"). Excluded from the Class are defendants and their affiliates, immediate families, legal representatives, heirs, successors or assigns and any entity in which defendants have or had a controlling interest.

27.     Plaintiff's claims are properly maintainable as a class action under Rule 23 of the Federal Rules of Civil Procedure.

28.     The Class is so numerous that joinder of all members is impracticable. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through discovery, Plaintiff believes that there are thousands of members in the Class. As of December 18, 2018, there were 41,178,033 shares of Company common stock outstanding. All members of the Class may be identified from records maintained by athenahealth or its transfer agent and may be notified of the pendency of this action by mail, using forms of notice similar to those customarily used in securities class actions.

29.     Questions of law and fact are common to the Class and predominate over questions affecting any individual Class member, including, *inter alia*:

a)      Whether defendants have violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder;

b)      Whether the Individual Defendants have violated Section 20(a) of the Exchange Act; and

c)      Whether Plaintiff and the other members of the Class would suffer irreparable injury were the Proposed Transaction consummated.

30.      Plaintiff will fairly and adequately protect the interests of the Class, and has no interests contrary to or in conflict with those of the Class that Plaintiff seeks to represent.  Plaintiff has retained competent counsel experienced in litigation of this nature.

31.      A class action is superior to all other available methods for the fair and efficient adjudication of this controversy.  Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action.

32.      Defendants have acted on grounds generally applicable to the Class with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class as a whole.

## SUBSTANTIVE ALLEGATIONS

### Background of the Company and Proposed Transaction

33.      athenahealth partners with hospital and ambulatory clients to drive clinical and financial results.  The Company offers network-based medical record, revenue cycle, patient engagement, care coordination, and population health services, as well as Epocrates and other point-of-care mobile applications.  Its network provides clients better insight into their own organizations as well as the ability to learn from the experience of every other client on the network.  The Company designs its services to help minimize the hassles that healthcare providers

and their staff face from complex billing rules, quality measurement and reporting, clinical documentation and data exchange, patient communication and referrals, and many related tasks that can take attention away from delivering care. In 2017, athenahealth generated revenue of $1,220.3 million compared to $1,082.9 million in 2016 and $924.7 million in 2015.

34.    On May 18, 2017, Elliott filed a statement on Schedule 13D announcing that it had acquired beneficial ownership of less than one percent of athenahealth's outstanding shares of common stock, as well as cash-settled swaps representing economic exposure comparable to an aggregate of 9.3% of athenahealth's outstanding shares of common stock. In its Schedule 13D, Elliott stated that it believed the Company's securities represented an attractive investment opportunity.

35.    Over the course of May to July 2017 and during September and October 2017, representatives of management of athenahealth and the Board held discussions with representatives of Elliott regarding the Company's financial position and performance, and certain opportunities and strategic initiatives that Elliott believed the Company could pursue.

36.    On November 22, 2017, Elliott sent a private letter to the Board (the "November 22 Letter"), setting out its view that the Company could better pursue and ultimately fulfill its strategy by becoming a private enterprise, and further noting that Elliott would be interested in acquiring athenahealth for between $150 and $155 per share in cash. The November 22 Letter further noted that Elliott believed that with additional diligence, it may also be able to substantially improve its price.

37.    On November 24, 2017, representatives of athenahealth's management contacted representatives of Lazard to discuss their engagement as a financial advisor to the Company in

connection with Elliott's acquiring a stake in athenahealth's common stock and the November 22 Letter.

38.    On December 5, 2017, the Board met and discussed the November 22 Letter and the non-binding indication of interest contained therein.  Following discussion, the Board determined that, based on the Company's prospects and financial performance, the Company's stock price and the Board's discussions, it was in the best interests of the Company and its stockholders not to pursue Elliott's non-binding expression of interest in acquiring the Company.  On December 13, 2017, the Company sent Elliott a letter responding to the November 22 Letter, noting that the Board had determined that the Company would continue to operate as a stand-alone company and execute on its strategic plan.

39.    On January 22, 2018, Elliott sent another private letter to the Board (the "January 22 Letter"), stating its view that engaging in a sale transaction would be in the best interests of the Company and its stockholders, and further noting that Elliott continued to be interested in acquiring athenahealth for between $150 and $155 per share in cash subject to due diligence.

40.    On February 2, 2018, the Board met and reviewed, among other things, the January 22 Letter.  Following discussion, the Board determined that, based on the Company's prospects and financial performance, the Company's stock price and the Board's discussions, it was in the best interests of the Company and its stockholders not to pursue Elliott's non-binding expression of interest in acquiring the Company outlined in the January 22 Letter.

41.    On May 7, 2018, Elliott sent and simultaneously publicly released a letter to the Board (the "May 7 Letter") outlining a non-binding proposal to acquire the Company for $160 per share in cash.

42.     On May 14, 2018, Elliott sent, and publicly released, a letter to the Board (the "May 14 Letter") reiterating its non-binding proposal to acquire the Company for $160 per share in cash.

43.     On May 15, 2018, representatives of athenahealth's management contacted representatives of Centerview to discuss their engagement as an additional financial advisor to the Company, alongside Lazard, in connection with review of Elliott's non-binding indication of interest and related matters.

44.     On May 16, 2018, the Board met and determined that management should update the existing financial analyses and the five-year management projections for the Company's forecasted performance to assist the Board in evaluating the Company's standalone plan and in reviewing and determining a course of action in connection with Elliott's non-binding expression of interest in acquiring the Company outlined in the May 14 Letter.

45.     On May 22, 2018, the Board met, and management of the Company presented to the Board the updated five-year management projections for the Company's forecasted performance (the "May 2018 Model").  The Board discussed with management and its advisors the process by which the projections had been prepared, the key assumptions underlying the May 2018 Model, and various positive and negative metrics that were presented in the model.  The Board, along with management and the Company's advisors, considered various sensitivities or alternative assumptions that would impact certain areas of measurement and the overall financial forecast for the Company.  Following the discussion, the Board instructed Centerview and Lazard to prepare preliminary financial analyses of Elliott's non-binding indication of interest to acquire the Company for $160 per share and of the Company's standalone value, for presentation to the Board at a meeting to be scheduled for May 31, 2018.

46.     On May 24, 2018, Elliott sent, and publicly released, a letter to the Board (the "May 24 Letter") reiterating its proposal to acquire the Company for $160 per share in cash and providing that Elliott was eager to engage in customary due diligence.

47.     At a May 31, 2018, Board meeting, Centerview and Lazard reviewed with the Board their preliminary financial analyses.  The Board discussed various strategic alternatives that may be available to athenahealth, including continuing as a standalone public company while implementing alternatives reflected by the May 2018 Model, a sale of athenahealth to Elliott on the terms reflected in the May 14 Letter, and a sale of the Company to any other buyer by initiating a formal sale process.

48.     On June 5, 2018, the Board met and determined to initiate a formal process to explore strategic alternatives for the Company.

49.     Following the Board's determination to initiate a formal process to explore strategic alternatives for the Company, representatives of Centerview and Lazard contacted 65 parties, including Veritas.  Between June 13, 2018 and July 20, 2018, the Company entered into confidentiality agreements with 31 of parties, including, separately, Elliott and Veritas.

50.     Between June 25, 2018 and July 3, 2018, representatives of Centerview and Lazard delivered a first round process letter to 29 parties, including Elliott and Veritas, outlining, among other things, that interested parties should each submit a non-binding written proposal no later than July 11, 2018.

51.     On July 11, 2018, July 12, and August 7, 2018, 11 parties, including each of Elliott and Veritas on behalf of Virence (separately), presented athenahealth with written preliminary non-binding indications of interest, with prices ranging in the $145 to $165 per share range.

Additionally, one party requested an extension of time to submit a written proposal and on July 16, 2018, athenahealth received one inbound expression of interest.

52.    On July 16, 2018, the Board authorized the retention of Centerview and Lazard as its financial advisors in connection with athenahealth's review of strategic alternatives, including a potential sale transaction.

53.    On August 20, 2018, representatives of Centerview and Lazard delivered a second round process letter to nine parties, including each of Elliott and Veritas on behalf of Virence (separately), outlining, among other things, that interested parties should each submit final written proposal no later than September 17, 2018, which date was subsequently revised to September 26, 2018.

54.    From September 26, 2018 to September 28, 2018, four parties, including Veritas (on behalf of Virence), presented athenahealth with written offers to acquire the Company, with prices ranging between $120 and $135 per share.    Additionally, one consortium (the "Consortium") comprised of three parties submitted a proposal to the Company for a strategic partnership with the Company, and Elliott presented athenahealth with a proposal for it to partner with another party to acquire the Company at a purchase price equal to approximately $145 per share.

55.    On October 10, 2018, athenahealth's management prepared and presented to representatives of Centerview and Lazard an updated draft five-year management forecast, which reflected management's revised forecast in light of the Company's business performance to date and certain information that had been learned through the diligence process with potential buyers, as well as what the Company might be able to achieve if it pursued a standalone strategy.

56.     On October 12, 2018, the Board met and received an update on developments related to the business since the May 2018 Model. Members of the Company's management then reviewed with the Board the forecasts that were provided to Centerview and Lazard on October 10, 2018. The Board discussed with management the process by which such forecasts had been prepared, including the key assumptions underlying such forecasts, and various positive and negative metrics that were presented in such forecasts as compared to the May 2018 Model. Following discussion, the Board directed athenahealth to continue to refine such forecasts, and then to authorize Centerview and Lazard to provide such forecasts as revised to bidders. In addition, representatives of the Company's consultant advisors McKinsey & Company ("McKinsey"), presented the results of the analyses conducted by McKinsey and Company management in assessing the Consortium's proposal for a strategic partnership with the Company.

57.     On October 16, 2018, athenahealth provided to bidders Company management's forecasts referred to in the Proxy Statement as the "October 2018 Model."

58.     On October 22, 2018, two bidders referred to in the Proxy Statement as "Party B" and "Party C" submitted offers to acquire the Company for between $117 and $125 per share in cash. On October 24, 2018, Veritas (on behalf of Virence) submitted a revised proposal to acquire the Company for $127.50 to $132.50 per share in cash, to be financed through a combination of equity and debt, including equity financing to come from both Veritas and Elliott.

59.     On October 24, 2018, the Board met and discussed the need for refining the management forecasts and potentially reflecting various sensitivities or alternative assumptions, for the purpose of further informing the Board's view of the Company's intrinsic value and the Company's prospects on a standalone basis. The Board determined that the Company's management should carefully evaluate the assumptions and sensitivities underlying the forecasts,

and assess the risk associated with, various elements of the October 2018 Model, in order to further refine a financial model (the "Adjusted Management Model") that should be referred to by the Board in its review of the Company's standalone plan, and by Centerview and Lazard for the purpose of preparing their financial analyses.

60.    On October 30, 2018, the Company and Veritas (on behalf of Virence) executed an exclusivity agreement providing that, among other things, the Company would negotiate a direct or indirect sale transaction exclusively with Veritas (on behalf of Virence) at a per share price equal to no less than $135 per share until November 12, 2018, provided that Veritas confirmed on every second day following execution of the exclusivity agreement that the terms and conditions of its final binding offer would not differ, in any material respect, from the terms previously proposed by Veritas on October 29, 2018, and that Veritas (on behalf of Virence) remains committed in good faith to announce a transaction in the timeframe agreed between the parties.

61.    On November 11, 2018, the Board met and Centerview and Lazard delivered their fairness opinions.

62.    Following the November 11, 2018 Board meeting, the parties finalized and executed the Merger Agreement.

**The Proposed Transaction**

63.    On the morning of November 12, 2018, athenahealth, Veritas and Evergreen issued a joint press release announcing the execution of the Merger Agreement. The press release states, in relevant part:

> WATERTOWN, Mass., SEATTLE, Wash. and NEW YORK – November 12, 2018 – athenahealth, Inc. (NASDAQ: ATHN), a leading provider of network-enabled services for hospital and ambulatory customers nationwide, Veritas Capital ("Veritas") and Evergreen Coast Capital ("Evergreen"), today announced that they have entered into a definitive agreement under which an affiliate of Veritas and Evergreen will acquire athenahealth for approximately $5.7 billion in cash.

Under the terms of the agreement, athenahealth shareholders will receive $135 in cash per share. The per share purchase price represents a premium of approximately 12 percent over the company's closing stock price on November 9, 2018, the last trading day prior to today's announcement, and a premium of approximately 27 percent over the company's closing stock price on May 17, 2017, the day prior to Elliott Management Corporation's announcement that it had acquired an approximate 9 percent interest in the company.

Following the closing, Veritas and Evergreen expect to combine athenahealth with Virence Health ("Virence"), the GE Healthcare Value-based Care assets that Veritas acquired earlier this year. The combined business is expected to be a leading, privately-held healthcare information technology company with an extensive national provider network of customers and world-class products and solutions to help them thrive in an increasingly complex environment.

Following the close of that transaction, the combined company is expected to operate under the athenahealth brand and be headquartered in Watertown, Massachusetts. The company will be led by Virence Chairman and Chief Executive Officer Bob Segert and an executive leadership team comprised of executives from both companies. Following the completion of the transaction, Virence's Workforce Management business will become a separate Veritas portfolio company under the API Healthcare brand.

"After a thorough strategic review process, we have decided to enter this agreement with Veritas, which we believe maximizes value for our shareholders and accelerates our goal to transform healthcare," said Jeff Immelt, Executive Chairman of athenahealth. "Combining with Virence will create new opportunities for collaboration and growth. Operating as a private company with Veritas's ownership and support will provide athenahealth with increased flexibility to achieve our purpose of unleashing our collective potential to transform healthcare."

"athenahealth is a market leader and a natural and strategic fit with Virence," said Ramzi Musallam, CEO and Managing Partner of Veritas Capital. "Virence and athenahealth have differentiated and complementary solutions, deep relationships with their respective customer bases and a shared culture of commitment to innovation. We look forward to leveraging our expertise in the sector, as well as the capabilities and solutions across both companies to provide superior value to customers, and create exciting growth opportunities for both sets of employees as Bob and the team build the future of healthcare IT."

Veritas, a government and technology focused investor, has a proven track record of driving growth for companies within the healthcare technology space, as illustrated by the firm's acquisition of Verscend Technologies and its combination with Cotiviti Holdings, as well as the firm's investment in Truven Health Analytics. Veritas has a deep understanding of the urgent need to digitize the healthcare system and brings a culture of intense customer focus and a drive for growth through focused R&D and product innovation.

"We are excited by the opportunity to partner with athenahealth, one of the largest and most connected provider networks in the nation, to drive outcomes that matter the most to our customers," said Bob Segert, Chairman and CEO of Virence. "athenahealth and Virence have complementary portfolios and highly-talented people, and this combination expands our depth and reach across the continuum of care. I'm looking forward to combining our mission-driven cultures to create an even stronger healthcare IT company."

athenahealth investor Elliott Management Corporation ("Elliott") has expressed support for the transaction. Elliott Partner Jesse Cohn said, "We are pleased to support this transformative transaction combining athenahealth and Virence, which we believe represents an outstanding, value-maximizing outcome for athenahealth shareholders."

Upon completion of the transaction, Elliott's private equity subsidiary, Evergreen Coast Capital, will retain a minority investment stake in the combined company.

Evergreen Managing Director Isaac Kim said, "We look forward to taking part in this unique opportunity. Under Bob's leadership and with Veritas' strategic oversight and strong track record of value creation, we believe the combined company will be a true leader in healthcare IT, ideally positioned to improve outcomes and reduce the cost of care."

## Insiders' Interests in the Proposed Transaction

64.    athenahealth insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders.  The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff and the public shareholders of athenahealth.

65.    athenahealth's directors and executive officers stand to reap substantial financial benefits for securing the deal with Veritas and Evergreen.  According to the Merger Agreement, Company options, and certain restricted stock units and performance stock units will be converted into the right to receive cash payments, as set forth in the following tables:

**Director Equity Summary Table**

| Director | Vested Stock Options (#)(1) | Vested Stock Options ($)(1) | RSU Awards (#)(2) | RSU Awards ($)(2) | PSU Awards (#)(3) | PSU Awards ($)(3) | Estimated Total Cash Consideration |
|---|---|---|---|---|---|---|---|

| | Unvested Stock Options (#) | Unvested Stock Options ($) | Unvested RSU Awards (#) | Unvested RSU Awards ($) | Unvested PSU Awards (#) | Unvested PSU Awards ($) | Estimated Total Cash Consideration |
|---|---|---|---|---|---|---|---|
| Amy Abernethy, M.D., Ph. D. | - | $ - | 1,931 | $260,685 | - | $ - | $ 260,685 |
| Brandon Hull | 15,565 | $922,486 | 1,931 | $260,685 | - | $ - | $ 1,183,171 |
| Jeffrey R. Immelt | - | $ - | 3,062 | $413,370 | - | $ - | $ 413,370 |
| Dev Ittycheria | - | $ - | 1,931 | $260,685 | - | $ - | $ 260,685 |
| John A. Kane (4) | 10,080 | $537,944 | 1,931 | $260,685 | - | $ - | $ 798,629 |
| Jacqueline D. Kosecoff, Ph. D. | - | $ - | 1,931 | $260,685 | - | $ - | $ 260,685 |
| Brian P. McKeon | - | $ - | 1,931 | $260,685 | - | $ - | $ 260,685 |
| Ed Park | - | $ - | 1,931 | $260,685 | 9,267 | $1,251,045 | $ 1,511,730 |
| Thomas J. Szkutak | - | $ - | 1,931 | $260,685 | - | $ - | $ 260,685 |

**Executive Officer Unvested Equity Awards Summary Table**

| Executive Officers | Unvested Stock Options (#)(1) | Unvested Stock Options ($)(1) | Unvested RSU Awards (#)(2) | Unvested RSU Awards ($)(2) | Unvested PSU Awards (#)(3) | Unvested PSU Awards ($)(3) | Estimated Total Cash Consideration |
|---|---|---|---|---|---|---|---|
| Bret Connor | 3,936 | $ - | 6,287 | $ 848,745 | 4,026 | $ 543,510 | $ 1,392,255 |
| Dan Haley | 3,690 | $ - | 7,189 | $ 970,515 | 10,092 | $ 1,362,420 | $ 2,332,935 |
| Prakash Khot | 6,441 | $ - | 18,243 | $ 2,462,805 | 11,280 | $ 1,522,800 | $ 3,985,605 |
| Marc A. Levine | 7,872 | $ - | 23,608 | $ 3,187,080 | 8,053 | $ 1,087,155 | $ 4,274,235 |
| Paul Merrild | 3,690 | $ - | 5,833 | $ 787,455 | 10,267 | $ 1,386,045 | $ 2,173,500 |
| Tim O'Brien | 3,690 | $ - | 8,474 | $ 1,143,990 | 9,138 | $ 1,233,630 | $ 2,377,620 |
| Jon Porter | 3,690 | $ - | 9,493 | $ 1,281,555 | 8,496 | $ 1,146,960 | $ 2,428,515 |
| David C. Young | - | $ - | 6,804 | $ 918,540 | - | $ - | $ 918,540 |

66.    Further, if they are terminated in connection with the Proposed Transaction, athenahealth's named executive officers will receive substantial cash severance payments in the form of golden parachute compensation, as set forth in the following table:

| Name | Cash (1) | Equity (2) | Perquisites/ Benefits (3) | Tax Reimbursement (4) | Other (5) | Total |
|---|---|---|---|---|---|---|
| Jonathan Bush (6)<br>*Former Chief Executive Officer, President and Director* | $4,830,000 | - | - | - | - | $4,830,000 |
| Marc A. Levine<br>*Executive Vice President, Chief Financial Officer and Treasurer* | $1,235,000 | $4,274,235 | $10,202 | - | $10,000 | $5,529,437 |
| John A. Kane<br>*Former Interim Chief Financial Officer* | - | $798,629 | - | - | - | $798,629 |
| Dan Haley<br>*Senior Vice President, Chief Legal and Administrative Officer* | $712,500 | $1,940,895 | $11,871 | - | $10,000 | $2,675,266 |
| Prakash Khot<br>*Executive Vice President, Chief Technology Officer* | $890,000 | $3,345,435 | $11,871 | - | $10,000 | $4,257,306 |

Jonathan Porter
*Senior Vice President, Chief
Product Officer*                     $847,500    $2,208,735    $11,871         -    $10,000    $3,078,106

**The Proxy Statement Contains Material Misstatements and Omissions**

67.    The defendants filed a materially incomplete and misleading Proxy Statement with the SEC and disseminated it to athenahealth's stockholders.  The Proxy Statement misrepresents or omits material information that is necessary for the Company's stockholders to make an informed decision whether to vote their shares in favor of the Proposed Transaction or seek appraisal.

68.    Specifically, as set forth below, the Proxy Statement fails to provide Company stockholders with material information or provides them with materially misleading information concerning: (i) the financial projections for athenahealth, relied upon by athenahealth's financial advisors, Centerview and Lazard, in their financial analyses; (ii) the data and inputs underlying the financial valuation analyses that support the fairness opinions provided by Centerview and Lazard; (iii) the background process leading to the Proposed Transaction; (iv) Lazard's potential conflicts of interest; and (v) Company insiders' potential conflicts of interest.  Accordingly, athenahealth stockholders are being asked to make a voting or appraisal decision in connection with the Proposed Transaction  without all material information at their disposal.

*Material Omissions Concerning the Financial Projections for athenahealth*

69.    The Proxy Statement omits material information regarding financial projections for athenahealth.

70.    Specifically, the Proxy Statement fails to disclose the May 2018 Model, the updated five-year projections prepared by Company management following Elliott's non-binding indication of interest to acquire the Company for $160 per share.

71.     Additionally, the Proxy Statement fails to disclose for each of the October 2018 Model and the Adjusted Management Model: (i) all line items used to calculate Adjusted EBITDA; (ii) all line items used to calculate Adjusted Operating Income; and (iii) a reconciliation of all non-GAAP to GAAP metrics.  For the October 2018 Model, the Proxy Statement also fails to disclose unlevered free cash flow.

72.     The omission of this material information renders the statements in the "Certain Financial Projections Utilized in Connection with the Merger" section of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

***Material Omissions Concerning Centerview's and Lazard's Financial Analyses***

73.     The Proxy Statement describes Centerview's and Lazard's fairness opinions and the various valuation analyses performed in support of their opinions.  However, the description of Centerview's and Lazard's fairness opinions and analyses fails to include key inputs and assumptions underlying these analyses.  Without this information, as described below, athenahealth's public stockholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on Centerview's and Lazard's fairness opinions in determining whether to vote in favor of the Proposed Transaction or seek appraisal.  This omitted information, if disclosed, would significantly alter the total mix of information available to athenahealth's stockholders.

74.     With respect to Centerview's *Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose: (i) quantification of the inputs and the assumptions underlying the discount rates ranging from 10.5% to 12.0% used in the analysis; (ii) athenahealth's net cash as of September 30, 2018; (iii) the perpetuity growth rates implied by the analysis; and (iv) the number of fully-diluted outstanding shares of Company common stock used in the analysis.

75.    With respect to Centerview's *Selected Public Company Analysis*, the Proxy Statement fails to disclose: (i) any benchmarking analyses for athenahealth in relation to the selected companies analyzed by Centerview; and (ii) the reason the EV/NTM EBITDA multiple for Evolent Health Inc. was deemed not meaningful.

76.    With respect to Centerview's *Selected Transactions Analysis*, the Proxy Statement fails to disclose the reason the EV/LTM EBITDA multiple for the Vista Equity Partners/Greenway Medical Technologies, Inc. transaction was deemed not meaningful.

77.    With respect to Lazard's *Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose: (i) quantification of the inputs and the assumptions underlying the discount rates ranging from 10.0% to 11.0% used in the analysis; (ii) athenahealth's consolidated net cash used in the analysis; and (iii) the number of fully-diluted outstanding shares of Company common stock used in the analysis.

78.    With respect to Lazard's *Selected Public Company Analysis*, the Proxy Statement fails to disclose: (i) any benchmarking analyses for athenahealth in relation to the selected companies analyzed by Lazard; and (ii) the reason the EV/NTM EBITDA multiple for Evolent Health Inc. was deemed not meaningful.

79.    With respect to Lazard's *Selected Precedent Transactions Multiple Analysis*, the Proxy Statement fails to disclose the reason the EV/LTM EBITDA multiple for the Vista Equity Partners/Greenway Medical Technologies transaction was deemed not meaningful.

80.    When a banker's endorsement of the fairness of a transaction is touted to stockholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.

81. The omission of this information renders the statements in the "Opinion of Centerview Partners LLC" and "Opinion of Lazard Frères & Co. LLC" sections of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

***Material Omissions Concerning the Background Process of the Proposed Transaction***

82. The Proxy Statement omits material information relating to the sale process leading up to the Proposed Transaction.

83. According to the Proxy Statement, between June 13, 2018 and July 20, 2018, the Company entered into confidentiality agreements with 31 of the parties contacted by Centerview and Lazard in connection with the Board's formal process, including, separately, Elliott and Veritas. *See* Proxy Statement at 31. The Proxy Statement fails to expressly indicate whether the confidentiality agreements that athenahealth entered into with these prospective bidders are still in effect and/or contain "don't ask, don't waive" ("DADW") standstill provisions that are presently precluding each and every one of these prospective bidders from making a topping bid for the Company.

84. The disclosure of the existence and terms of any confidentiality agreements athenahealth entered into with any other party is crucial to athenahealth stockholders being fully informed of whether their fiduciaries have put in place restrictive devices to foreclose a topping bid for the Company.

85. Additionally, the Proxy Statement fails to disclose a fair summary of "the analyses that had been conducted by McKinsey with the assistance of athenahealth's management in assessing the Consortium's proposal for a strategic partnership with the Company." *Id.* at 33.

86. Moreover, the Proxy Statement fails to disclose the terms of McKinsey's engagement, including the amount of compensation McKinsey received or will receive in

connection with its engagement and whether McKinsey has provided past services to any parties to the Merger Agreement or their affiliates, as well as the timing and nature of such services and the amount of compensation received by McKinsey for such services.

87.    The omission of this information renders the statements in the "Background of the Merger" section of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

***Material Omissions Concerning Lazard's Potential Conflicts of Interest***

88.    The Proxy Statement fails to disclose material information concerning the potential conflicts of interest faced by Lazard.

89.    For example, the Proxy Statement sets forth that:

> Lazard in the past have provided, currently is providing and in the future may provide certain investment banking services to the Company and certain companies in which Elliott Management Corporation (a stockholder of the Company and Parent) has an investment, for which we have received and may receive compensation. During the past two years, the financial advisory business of Lazard has provided advisory services to the Company (for which Lazard has received aggregate fees of approximately $1 million) and advisory services to two (2) companies in which Elliott holds less than a majority interest).

*Id.* at 56.  The Proxy Statement fails, however, to disclose the amount of compensation received by Lazard for certain investment banking services to certain companies in which Elliott Management Corporation (a stockholder of the Company and Parent) has an investment, and advisory services to two companies in which Elliott holds less than a majority interest.

90.    Full disclosure of investment banker compensation and all potential conflicts is required due to the central role played by investment banks in the evaluation, exploration, selection, and implementation of strategic alternatives.

91.     The omission of this information renders the statements in the "Opinion of Lazard Frères & Co. LLC" section of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

***Material Omissions Concerning Company Insiders' Potential Conflicts of Interest***

92.     Further, the Proxy Statement fails to disclose material information concerning the potential conflicts of interest faced by athenahealth insiders.

93.     The November 12, 2018 joint press release sets forth that "[f]ollowing the close of that transaction, the combined company is expected to operate under the athenahealth brand and be headquartered in Watertown, Massachusetts. The company will be led by Virence Chairman and Chief Executive Officer Bob Segert and an executive leadership team comprised of executives from both companies."

94.     However, the Proxy Statement fails to disclose the specific details of the employment-related discussions and negotiations that occurred between Veritas, Elliott and athenahealth executive officers, including which members of athenahealth management are expected to continue with the post-close company as well as whether any of Veritas and Elliott's prior proposals or indications of interest mentioned management retention or board membership in the combined company.

95.     Communications regarding post-transaction employment and merger-related benefits during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for stockholders to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

96.     The omission of this information renders the statements in the "Background of the Merger" and "Interests of Directors and Executive Officers in the Merger" sections of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

97.     The Individual Defendants were aware of their duty to disclose the above-referenced omitted information and acted negligently (if not deliberately) in failing to include this information in the Proxy Statement.  Absent disclosure of the foregoing material information prior to the stockholder vote on the Proposed Transaction, Plaintiff and the other members of the Class will be unable to make a fully-informed voting or appraisal decision in connection with the Proposed Transaction and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

**CLAIMS FOR RELIEF**

**COUNT I**

**Against All Defendants for Violations of Section 14(a) of the
Exchange Act and Rule 14a-9 Promulgated Thereunder**

98.     Plaintiff repeats all previous allegations as if set forth in full.

99.     During the relevant period, defendants disseminated the false and misleading Proxy Statement specified above, which failed to disclose material facts necessary to make the statements, in light of the circumstances under which they were made, not misleading in violation of Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

100.     By virtue of their positions within the Company, the defendants were aware of this information and of their duty to disclose this information in the Proxy Statement.  The Proxy Statement was prepared, reviewed, and/or disseminated by the defendants.  It misrepresented and/or omitted material facts, including material information about the financial projections for athenahealth, the data and inputs underlying the financial analyses performed by Centerview and

Lazard, the background process leading to the Proposed Transaction, and Lazard's and Company insiders' potential conflicts of interest. The defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

101. The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder would consider them important in deciding how to vote on the Proposed Transaction or whether to seek to exercise their appraisal rights.

102. By reason of the foregoing, the defendants have violated Section 14(a) of the Exchange Act and SEC Rule 14a-9(a) promulgated thereunder.

103. Because of the false and misleading statements in the Proxy Statement, Plaintiff and the Class are threatened with irreparable harm, rendering money damages inadequate. Therefore, injunctive relief is appropriate to ensure defendants' misconduct is corrected.

## COUNT II

### Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act

104. Plaintiff repeats all previous allegations as if set forth in full.

105. The Individual Defendants acted as controlling persons of athenahealth within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of athenahealth, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

106. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to

and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

107.    In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.  The Proxy Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction.  They were, thus, directly involved in the making of the Proxy Statement.

108.    In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction.  The Proxy Statement purports to describe the various issues and information that they reviewed and considered—descriptions the Company directors had input into.

109.    By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

110.    As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and SEC Rule 14a-9, promulgated thereunder, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of defendants' conduct, athenahealth's stockholders will be irreparably harmed.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in his favor on behalf of athenahealth, and against defendants, as

follows:

A.    Ordering that this action may be maintained as a class action and certifying Plaintiff as the Class representative and Plaintiff's counsel as Class counsel;

B.    Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until defendants disclose and disseminate the material information identified above to athenahealth stockholders;

C.    In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff and the Class;

D.    Declaring that defendants violated Sections 14(a) and/or 20(a) of the Exchange Act, as well as SEC Rule 14a-9 promulgated thereunder;

E.    Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

F.    Granting such other and further relief as this Court may deem just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury.


Dated:  January 7, 2019

By  */s/ Mitchell J. Matorin*
Mitchell J. Matorin (BBO# 649304)
MATORIN LAW OFFICE, LLC
18 Grove Street, Suite 5
Wellesley, Massachusetts 02482
(781) 453-0100
mmatorin@matorinlaw.com

**OF COUNSEL:**

**WEISSLAW LLP**
Richard A. Acocelli
Michael A. Rogovin
Kelly K. Moran
1500 Broadway, 16th Floor
New York, New York 10036
Tel: (212) 682-3025
Fax: (212) 682-3010

**BRAGAR EAGEL & SQUIRE, P.C.**
Melissa A. Fortunato
885 Third Avenue, Suite 3040
New York, New York 10022
Tel: (212) 308-5858
Fax: (212) 486-0462
Email: fortunato@bespc.com

*Attorneys for Plaintiff*